IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DANNY WASSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-3144-CV-S-ODS-SSA |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born August 7, 1959, and has a GED. Plaintiff's work history includes working as a maintenance repairer and a diesel mechanic. Plaintiff alleges he became disabled on April 20, 2008, due to a combination of COPD, emphysema, heart attack with stentings, sleep apnea, hypertension, prior back injury, hemophilia, a right groin clot, staph infection, gastric ulcer, a broken rib, headaches, and vision and hearing problems. R. 214.

On April 3, 2007, Plaintiff went to the hospital complaining of chest pain and it was revealed he had left atrial disease. R. 264. Plaintiff had an angioplasty and stenting and he was discharged the next day. R. 264.

Plaintiff saw Walter Rose, M.D., on May 9, 2007, complaining of shortness of breath. R. 293. Dr. Rose ordered a pulmonary function study to be performed on Plaintiff. R. 293.

On January 19, 2009, Plaintiff saw Jason Spurling, M.D., and complained of chest pain. R. 309. Dr. Spurling noted that Plaintiff had a history of sleep apnea and chronic obstructive pulmonary disease and was still smoking and did not wear his continuous positive airway pressure mask. R. 309. Dr. Spurling diagnosed Plaintiff with COPD, hypertension, gastroesophageal reflux disease, and a history of coronary disease, for which he had not been taking his medication. R. 310. Dr. Spurling also noted that Plaintiff "has been counseled extensively in the past to quit smoking and was counseled again during this hospital stay as to the need to quit smoking." R. 310.

That same day, Plaintiff saw Jeffrey Silverman, M.D., who noted Plaintiff was not taking his medication, did not follow a diet, and smoked two packs a day for 37 years. R. 312-13. Dr. Silverman opined Plaintiff had a normal sinus rhythm, his stress test was normal, his ejection fraction was 65%, and a chest x-ray revealed his heart size was at the upper limit of normal. R. 313, 316-17, 319.

On January 20, 2009, Plaintiff underwent a stress test revealing no evidence of ischemia or diminished coronary flow. R. 322. However, a "small" inferior apical fixed perfusion defect was shown as well as "mild depressed global ejection fraction at 46% and mild septal region hypokinesis." R. 322.

On February 10, 2009, Dr. Silverman noted Plaintiff continued to smoke one and a half packs of cigarettes a day. R. 327. On May 12, 2009, Plaintiff reported smoking less than a pack of cigarettes a day. R. 336. Plaintiff also denied any chest pain or shortness of breath. R. 336. Plaintiff's electrocardiogram results were normal. R. 336. Dr. Silverman diagnosed Plaintiff with hypertension, COPD, and sleep apnea, and recommended dieting, exercising, and smoking cessation. R. 337.

On October 22, 2009, Plaintiff complained of chest pain. R. 341. Dr. Silverman recommended a heart catheterization, which was done on October 26, 2009. R. 341-43, 349. It revealed coronary artery disease and stenosis that required angioplasty and stenting. R. 349-51.

On December 9, 2009, Plaintiff saw Dr. Silverman and denied chest pain or shortness of breath. R. 404. Dr. Silverman noted that Plaintiff's lungs were clear and an EKG revealed normal sinus rhythm. R. 404-05. Later that month, John McCormack, M.D., diagnosed Plaintiff with anxiety and depression. R. 410. Plaintiff was prescribed

medication. R. 410. On December 31, 2009. Plaintiff went to the hospital with complaints of arm numbness and a cough. R. 425. X-rays showed no active pulmonic disease. R. 420.

On March 8, 2010, Plaintiff saw Dr. McCormack, who noted Plaintiff was oriented, had an appropriate mood and affect, had normal thought content, could perform basic computations, and had normal ability to concentrate. R. 454. Dr. McCormack noted similar findings a month later. R. 449-50.

On August 6, 2010, Plaintiff complained of chest pain and pressure that radiated to his arm. R. 461. Dr. McCormack diagnosed Plaintiff with anxiety, depression, coronary artery disease, and hypertension, and advised smoking cessation. R. 463.

Plaintiff went to the hospital on August 30, 2010, due to chest pain. R. 466, 472, 479, 486-87. Plaintiff reported smoking 10 cigarettes a day. R. 486. The next day Joseph Forney, M.D., diagnosed Plaintiff with coronary artery disease and stenosis. R. 485.

On December 23, 2010, Plaintiff saw David Dale, D.O., who noted Plaintiff's heart, lung, and musculoskeletal and neuropsychiatric systems were normal. R. 504. Dr. Dale diagnosed Plaintiff with arterial dissection, chest pain, sleep apnea, hypertension, and COPD. R. 504.

Plaintiff returned to Dr. Dale on June 20, 2011 for a follow-up appointment. R. 521. Dr. Dale noted that Plaintiff's heart and lungs were normal. R. 521. Plaintiff was diagnosed with hypertension, major depression, arterial dissection, COPD, and sleep apnea. R. 521. Later that month, Dr. Dale completed a Medical Source Statement and opined that Plaintiff could lift or carry up to ten pounds occasionally and five pounds frequently. R. 519. He also opined that Plaintiff could: stand, walk, or sit for two hours in an eight-hour day with usual breaks; and stand or walk continuously for 30 minutes at a time and sit continuously for one hour at a time. R. 519-20. Dr. Dale noted that Plaintiff had postural, manipulative, and environmental limitations. R. 520.

Plaintiff underwent a mental assessment by Janice May, Psy. D., on June 23, 2011. R. 506. Dr. May reported that Plaintiff was well oriented and alert, his memory was not impaired, and his judgment was good, but his mood was depressed. R. 513. Dr. May stated that Plaintiff provided information in an "exaggerated manner." R. 513.

3

Dr. May diagnosed Plaintiff with major depressive disorder and assigned him a global assessment of functioning (GAF) score of 45. R. 514. Dr. May opined that Plaintiff had no significant limitations with understanding and memory, but had moderate limitations with sustained concentration and persistence, social interaction, and adaptation. R. 515-17.

Kenneth Burstin, Ph.D., a non-examining Disability Determination Services psychologist, opined on January 27, 2010, that Plaintiff had non-severe mental impairments of depression and anxiety. R. 437, 440-41. Dr. Burstin also opined that Plaintiff had mild restrictions with activities of daily living, social functioning, and maintaining concentration, persistence, or pace. R. 445.

At the administrative hearing, Plaintiff testified he stopping working because "it just got to [him] too much" and because he could "hardly breathe." R. 33. Plaintiff admitted that he smokes less than a pack of cigarettes a day and that all of his medical providers have suggested that smoking is not a good idea. R. 33, 42. Plaintiff testified he could lift 45-50 pounds at one time, stand for an hour or two, walk for 10 to 15 minutes, and sit for an hour. R. 35. Further, Plaintiff testified he shopped, took care of his personal needs, and sometimes cooked and washed dishes. R. 36-37.

At step one of the five-step sequential process, the administrative law judge ("ALJ") determined that Plaintiff had not engaged in substantial gainful activity since June 19, 2009. R. 12. At step two, the ALJ found Plaintiff has the following severe impairments: coronary artery disease (status post myocardial infarction and multiple stent placements), chronic obstructive pulmonary disease, sleep apnea, history of degenerative disc disease and status post laminectomy, anxiety, depression, and obesity. R. 13. At step three, the ALJ determined Plaintiff's ailments do not meet or equal a listed impairment. R. 13. At steps four and five, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform light work (lift 20 pounds occasionally and lift or carry 10 pounds frequently, stand or walk for six hours out of an eight-hour workday and sit for six hours out of an eight-hour workday) as defined in 20 CFR 404.1567(b) and 416.967(b) except: He must be allowed to alternate sitting and standing at least every 30 minutes. He can occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. He can occasionally stoop, but can never kneel, crouch or crawl. He must avoid moderate exposure to irritants and avoid all

4

exposure to unprotected heights, hazardous machinery and operational control of moving machinery. He is limited to the performance of simple, routine and repetitive tasks requiring no public interaction. He can work around co-workers throughout the day, but with only occasional interaction with co-workers.

R. 14. Next, the ALJ found Plaintiff is unable to perform any past relevant work but based on testimony from a vocational expert the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as jobs as a collator operator, electrical assembler, and a price marker. Finally, the ALJ concluded that Plaintiff is not disabled.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991) (citing *Hutsell v. Sullivan*, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A. The ALJ Properly Determined Plaintiff's RFC

Plaintiff argues the ALJ erred in assessing Plaintiff's RFC by not assigning controlling weight to Dr. Dale's opinion. Plaintiff argues Dr. Dale's opinion was entitled to controlling weight because he was a treating physician. Defendants argue that Dr. Dale was not a treating physician because he only treated Plaintiff on two occasions.

5

The ALJ has the responsibility to assess a claimant's RFC based on all the relevant evidence. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). A treating physician's opinion will be given controlling weight if it is not inconsistent with the other substantial evidence in the record and is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Woods v. Astrue*, 780 F.Supp.2d 904, 912 (E.D. Mo. 2011) (citing *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). "While a treating physician's opinion is usually entitled to great weight, the Eighth Circuit has cautioned that it 'does not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995)). Accordingly, a treating physician's opinion can be discounted where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). The ALJ must give "good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ declined to assign controlling or significant weight to Dr. Dale's opinion. The ALJ noted:

> This medical sources statement is not supported by Dr. Dale's very limited treatment notes or by the medical evidence of record overall. The claimant's treating cardiologist have placed no exertional or other physical limitations on the claimant. Dr. Dale's statement appears to merely reflect the claimant's own perceived limitations. For these various reasons, his medical source statement is not entitled to controlling weight or significant weight. Additionally, the claimant himself reported a higher capacity for lifting and standing in his hearing testimony.

R. 16. The Court finds that the ALJ gave good reasons for not assigning controlling or significant weight to Dr. Dale's opinion.

First, whether or not Dr. Dale is classified as a treating physician, he only examined Plaintiff twice before completing a medical source statement. Opinions given by physicians who only met with a patient on a limited number of occasions are not entitled to controlling weight as a medical opinion of a treating source. *See Randolph v. Barnhart*, 386 F.3d 835 (8th Cir. 2004) (finding that a physician's medical source statement opinion was not entitled to controlling weight when only meeting with patient

6

on three prior occasions); *see also Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) ("When deciding how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations.") (internal quotations omitted). Even if Dr. Dale was a treating physician, it was not err for the ALJ to not assign controlling weight to his opinion because of the limited number of occasions he treated Plaintiff.

Second, Dr. Dale's treatment notes and medical evidence of record are inconsistent with Dr. Dale's opinion. Dr. Dale noted that Plaintiff's extremities and musculoskeletal system were "normal." R. 504. Further, although Plaintiff's treating physicians did note recurrent chest pain and shortness of breath, they did not place Plaintiff under any limitations.

Finally, the Record reflects that there are inconsistencies between Plaintiff's testimony and Dr. Dale's assessments regarding Plaintiff's lifting and standing capacities. Plaintiff testified he could lift 45-50 pounds at one time, whereas Dr. Dale opined that Plaintiff could only lift up to 10 pounds occasionally and five pounds frequently. R. 35, 519.

Plaintiff also argues that the ALJ erred by not assigning a specific weight to Dr. Dale's opinion. Remand is appropriate when it is unclear what weight is afforded to a physician's opinion. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008). However, in this case, the ALJ stated that Dr. Dale's opinion was not entitled to controlling or significant weight. R. 16. The ALJ's statement is sufficient for ascertaining how much weight was given to Dr. Dale's opinion and remand is not appropriate.

The Court finds that there is substantial evidence to support the ALJ's RFC finding.

B. The ALJ Properly Weighed Plaintiff's Credibility

Plaintiff also contends the ALJ improperly analyzed his credibility. The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

7

The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.* An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Guilliams*, 393 F.3d at 801.

Here, there is substantial evidence in the Record to support the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the medical evidence of record and the RFC assessment. First, Plaintiff's daily activities are inconsistent with his assertion of disability. Plaintiff testified that he can go up and down stairs slowly, sometimes cooks and does the dishes, shops if he has a shopping cart, and denied having any problems taking care of his personal needs. R. 36-37. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

Second, the ALJ found that Plaintiff was noncompliant with medical treatment by continuing to smoke cigarettes daily after being instructed by all his doctors to quit smoking entirely. R. 17-18. "A failure to follow a recommended course of treatment . . . weights against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Plaintiff's continuance of smoking despite his respiratory and cardiac complaints and against doctor's orders to cease smoking lessens his credibility.

Finally, the ALJ also noted that Plaintiff had not been referred for specialist psychiatric are by any of his treating sources and that he has not sought care at a community mental health center on his own. R. 16. A claimant's subjective complaints of pain may be discredited by evidence that the claimant had received minimal medical

treatment when compared to the symptoms alleged. *Dukes v. Barnhart*, 426 F.3d 923, 928 (8th Cir. 2006) (finding that an ALJ properly determined a claimant lacked credibility due in part to "absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care."). Plaintiff's minimal psychiatric treatment is another factor that goes against the credibility of Plaintiff's complaints of disabling pain and other subjective symptoms.

Although it may be that any one of these factors alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision. The ALJ properly analyzed Plaintiff's credibility.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 8, 2013　　　　　UNITED STATES DISTRICT COURT

9